UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 09-cr-00389-WYD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. XCEL ENERGY, INC.;
2. PUBLIC SERVICE COMPANY OF COLORADO;
3. RPI COATING, INC.;
4. PHILIPPE GOUTAGNY; and
5. JAMES THOMPSON,

    Defendant.

## ORDER

I.    INTRODUCTION

THIS MATTER comes before the Court on the following four pretrial motions: (1) Defendants Xcel Energy, Inc. ("Xcel") and Public Service Company of Colorado's ("PSCO") Motion to Compel Production of Exculpatory Evidence (docket #120); (2) Defendants Xcel and PSCO's Motion for an Order 1. Requiring Disclosure to the Defendants of a Complete Version, With No Pages Taken Out, of the Chemical Safety Board's Draft Report Concerning the Cabin Creek Accident, 2. Staying the Government's Demand That the Defendants Respond to the "Facts" in That Draft Report, and 3. Prohibiting the Public Release of That Report Until After Trial in This Matter (docket #130); (3) Defendants RPI Coating, Inc. and Philippe Goutagny's Motion for an Order 1. Requiring Disclosure to the Defendants of a Complete Version, With No

Pages Taken Out, of the Chemical Safety Board's Draft Report Concerning the Cabin Creek Accident, 2. Staying the Government's Demand That the Defendants Respond to the "Facts" in That Draft Report, and 3. Prohibiting the Public Release of That Report Until After Trial in This Matter (docket #134); (4) Defendant RPI's Motion for Clarification of the Protective Orders (docket #147); and (5) Government's Motion to Quash Subpoena Served on Fact Witness Donald Holmstrom for Improper Purpose (docket # 155).

On June 24, 2010, I held a hearing on the pending motions. After carefully considering the pleadings submitted to the Court along with the arguments presented by the parties at the hearing, I enter the following orders.

II.  BACKGROUND[1]

The Indictment charges the Defendants with five counts of Violating OSHA Regulations and Causing Death pursuant to 29 U.S.C. § 666. There is one count for each of the five deceased employees. The Indictment also charges Defendant RPI Coating, Inc. with Obstruction in violation of 18 U.S.C. § 1519.

By way of background, on October 2, 2007, five men died while working at the Cabin Creek Hydro Plant near Georgetown, Colorado ("Cabin Creek accident"). Defendants Xcel and PSCO operate the plant. The men were working inside a large, drained water pipe — called a penstock — when a fire erupted. The men were unable to escape the penstock as it was blocked by the fire. The victims died from

---

[1] On March 29, 2010, I entered an order denying Defendants' motions to dismiss the Indictment. Included in that order is an extensive recitation of the pertinent facts. The order is incorporated by reference herein.

asphyxiation due to the inhalation of carbon monoxide. The Indictment alleges that the five deaths were caused by violations of OSHA's workplace safety and health regulations, which resulted in the fire and the failure to rescue the men. (Indictment ¶ 1.)

III. <u>PENDING MOTIONS</u>

    A. <u>Defendants' Motions for an Order (1) Requiring Disclosure to the Defendants of a Complete Version, With No Pages Taken Out, of the Chemical Safety Board's Draft Report Concerning the Cabin Creek Accident, (2) Staying the Government's Demand That the Defendants Respond to the "Facts" in That Draft Report, and (3) Prohibiting the Public Release of That Report Until After Trial in This Matter (dockets #130 and #134)</u>

In these two motions, the Defendants request an order barring an independent federal agency, the Chemical Safety Board ("CSB"), from issuing its final report on the Cabin Creek accident. In support of the motion, Defendants assert that the CSB participated and assisted the United States Attorneys' Office in prosecuting the criminal case. Defendants further argue that the CSB deliberately delayed release of its final report in an effort to generate negative publicity and create unfair prejudice to the Defendants. I disagree.

The CSB, an independent federal agency, is charged with investigating industrial chemical accidents. Headquartered in Washington D.C., the agency's board members are appointed by the President and confirmed by the Senate. *See* U.S. Chemical Safety Board Webpage; 42 U.S.C. § 7412(r)(6)(A)-(S). The CSB conducts root cause investigations of chemical accidents at industrial facilities such as the Cabin Creek Hydro Plant. In an effort to increase safety and prevent future chemical accidents, the

CSB does not issue fines or citations, but does make recommendations to plants, companies, regulatory agencies, industry organizations and labor groups. Congress designed the CSB to be non-regulatory and independent of other agencies in order for its investigations to review the effectiveness of regulations and regulatory enforcement. *Id.*

The CSB investigative staff includes chemical and mechanical engineers, industrial safety experts and other experts with chemical industry expertise. CSB investigators commence an investigation by conducting detailed witness interviews with plant employees, managers and neighbors. CSB investigates the accident site by collecting chemical equipment and samples that are sent to independent laboratories for testing. In order to gain an understanding of the circumstances of a particular accident, the CSB also examines company safety records and operating procedures. *Id.* Throughout the course of an investigation, CSB investigators sift through evidence, consult with CSB board members and review regulations and industry practices before drafting key findings, root causes and recommendations. This investigative process generally takes six to 12 months to complete, and a draft report is then submitted to the board for consideration. Final reports may be adopted by the CSB or in a formal meeting near the accident site or in Washington D.C. *Id.*

At the June 24, 2010 hearing, I denied the Government's motion to quash subpeona (docket #155) and ordered CSB investigator Don Holmstrom to testify. Holmstrom was the lead CSB investigator of the Cabin Creek accident. Consistent with a sworn declaration submitted to the Court, Holmstrom confirmed that the CSB

conducted its investigation independent of the prosecution in this case. In fact, Holmstrom stated that he was unaware the Government was pursuing criminal charges in connection with the Cabin Creek accident until the end of 2008. In the fall of 2008, Holmstrom explained that Assistant United States Attorney John Haried[2] sent an e-mail to the CSB requesting its independent investigative information. The request was processed by CSB's general counsel, and certain documents were provided. Holmstrom also testified that as of the day of the June 24, 2010 hearing, he was unaware that the Government used any of the CSB's investigative findings in obtaining an Indictment in this matter.

Holmstrom stated that the CSB's investigation of the Cabin Creek accident has spanned more than 30 months, making it Holmstrom's longest running case. He explained that much of the delay was due to the CSB opening a new office in Denver, Colorado. At that time, Holmstrom was also investigating 18 unrelated cases. On April 22, 2010, the CSB's Cabin Creek draft report was submitted to the parties. Should the Court deny Defendants' requested relief to bar the CSB from issuing its final report, Holmstrom testified that the CSB would most likely issue its final report in four to five weeks. Once it issues its final Cabin Creek report, the CSB will not hold a public hearing but will most likely hold a press conference to publicize its final report. The CSB may also release a video and contact recipients such as OSHA, the state of Colorado, Xcel and RPI and an industry association with its recommendations.

---

[2] On June 8, 2010, AUSA Haried withdrew as counsel of record for the Government and was replaced by AUSA Jaime Pena.

Holmstrom testified that the CSB's final report — which informs the public about the inadequate practices and regulations in connection with using flammable materials in a confined space — should be issued as soon as possible in the interest of public safety.

Presumed prejudice is rarely invoked and only in extreme situations. *United States v. Abello-Silva*, 948 F.2d 1168, 1177 (10th Cir. 1991). This is a difficult standard to meet even in cases in which there has been extensive media coverage. *Stafford v. Saffle*, 34 F.3d 1557, 1566 (10th Cir. 1994). Defendants have the burden of proving that "an irrepressibly hostile attitude pervaded the community." *Id.* Defendants typically make the presumption of prejudice argument in terms of adverse pretrial publicity. In that regard, the Tenth Circuit notes that "[p]re-trial publicity in topical criminal cases is inevitable. The publicity impacts defendant's rights only when it dictates the community's opinion as to guilt or innocence." *Abello-Silva*, 948 F.2d at 1176. In *Abello-Silva*, 31 articles were published about the case over a six-month period. The court held that "adverse publicity existed, but it did not permeate the community to such a degree that empaneling a fair jury would have been impossible." *Id.* at 1177. If we were to require the relocation of every trial following a crime about which multiple stories were broadcast or published, the local trial of newsworthy cases would become the exception rather than the rule." *Gardner v. Galetka*, 568 F.3d 862, 888 (10th Cir. 2009). "The trial court has broad discretion in gauging the effects of allegedly prejudicial publicity and in taking measures to insure a fair trial." *Abello-Silva*, 948 F.2d at 1177.

In a recent opinion, the Supreme Court reaffirmed the Sixth Amendment guarantee that criminal defendants have the right to trial by an impartial jury. *Skilling v.*

*United States*, 561 U.S. ____ (June 24, 2010) (holding that extensive pretrial publicity did not prevent Enron executive from obtaining a fair trial). However, the Court cautioned that it has presumed prejudice from pretrial publicity only in exceptional settings where the trial became "a hollow formality" or when the courthouse proceedings were overrun by the press "to accommodate the public appetite for carnival." *See id.*; *Murphy v. Florida*, 421 U.S. 794, 799 (1975); *see Sheppard v. Maxwell*, 384 U.S. 333 (1966) (massive publicity insisted that defendant was guilty; veniremen's names were published and prospective jurors were inundated by calls and letters); *see Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (circus atmosphere created when pretrial hearings were broadcast live to community and at least twelve cameramen took motion or still pictures throughout the proceedings); *see Rideau v. Louisiana*, 373 U.S. 723 (1963) (sheriff videotaped defendant's detailed jailhouse confession — taken during "kangaroo court" proceedings without lawyer present — and assisted in broadcasting it numerous times to a relatively small community).

Based on the evidence presented at the June 24, 2010 hearing, the arguments, and the applicable law, I find Defendants' arguments to be without merit. Moreover, the Defendants cite no authority in support of their request that I bar the issuance of the CSB's final Cabin Creek report. First, I find the CSB acted as an independent federal agency in conducting its investigation and drafting its report as required by 42 U.S.C. § 7412(r)(6)(A)-(S). There is no evidence whatsoever that the CSB acted in concert with the prosecution in investigating this accident or intentionally delayed the issuance of its report.

Second, with respect to the issue of unfair prejudice due to media reports, I find Defendants have failed to prove that should the CSB issue its final report in four to five weeks, an irrepressibly hostile attitude will pervade the community. I further find that there are sufficient safeguards (voir dire and jury instructions among other things) the Court may employ to ensure a fair trial with an jury that is not influenced by pretrial publicity. This case has already garnered significant publicity.[3] I do not believe that the CSB's final report — due to be issued in four to five weeks — will significantly increase prejudice to the potential jury pool. Moreover, the trial in this matter has not been set, and will likely not occur until some time in 2011. Finally, I find that the public benefit of the prompt release of the CSB's final report and its safety recommendations outweigh any potential prejudice that might occur to the Defendants in connection with a jury trial that will likely not occur until next year. For reasons stated on the record at the June 24, 2010 hearing and in this Order, Defendants' motions are denied.

B.  <u>Defendants Xcel and PSCO's Motion to Compel Production of Exculpatory Evidence (docket #120)</u>

After carefully considering the issue presented in the pleadings and at the June 24, 2010 hearing, for reasons stated on the record, I find that this motion should be granted in part and denied in part. The motion is granted to the extent that it requests legitimate *Brady* material that may have some bearing on this case. However, the motion is denied to the extent that the specific requests are over broad. Defendants are permitted to generate reasonable, narrow requests. Accordingly, the parties shall meet

---

[3] I note that a news reporter was present at the June 24, 2010 hearing and issued several public news stories detailing the events of the hearing.

and confer not later than Friday, July 2, 2010 to agree on an efficient process to generate a new set of appropriate discovery requests. Then, the parties shall update the Court with an appropriate status report.

    C.    <u>Defendant RPI's Motion for Clarification of the Protective Orders (docket #147)</u>

For reasons stated on the record at the June 24, 2010 hearing, the motion is hereby deferred. RPI is ordered to submit relevant authority on this issue to the Court not later than July 7, 2010. The Government shall file its response not later than July 16, 2010.

IV.    <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that the Government's Motion to Quash Subpoena Served on Fact Witness Donald Holmstrom for Improper Purpose (docket # 155) is **DENIED.** It is

FURTHER ORDERED that Defendants' Motions for an Order (1) Requiring Disclosure to the Defendants of a Complete Version, With No Pages Taken Out, of the Chemical Safety Board's Draft Report Concerning the Cabin Creek Accident, (2) Staying the Government's Demand That the Defendants Respond to the "Facts" in That Draft Report, and (3) Prohibiting the Public Release of That Report Until After Trial in this Matter (dockets #130 and #134) are **DENIED.** It is

FURTHER ORDERED that Xcel and PSCO's Motion to Compel Production of Exculpatory Evidence (docket #120) is **DENIED IN PART and GRANTED IN PART.** The motion is granted to the extent that it requests legitimate *Brady* material that may

have some bearing on this case.  The motion is denied to the extent that the specific requests are over broad.  Defendants are permitted to generate reasonable, narrow requests.  Accordingly, the parties shall meet and confer not later than **Friday, July 2, 2010** to agree on an efficient process to generate a new set of appropriate discovery requests.  Then, the parties shall update the Court with an appropriate status report.  It is

FURTHER ORDERED that RPI's Motion for Clarification of the Protective Orders (docket #147) is **DEFERRED**.  RPI is ordered to submit relevant authority on this issue to the Court not later than **Wednesday, July 7, 2010.**  The Government shall file its response not later than **Friday, July 16, 2010.**  It is

FURTHER ORDERED that a *Daubert* hearing is set for **Tuesday, July 27, 2010 at 9:00 a.m.** on the Government's expert witness Michael Roop.  Mr. Roop is ordered to appear to give testimony.  Also at that hearing, the parties shall be prepared to discuss the Government's *Daubert* motions.  It is

FURTHER ORDERED that all motions for severance shall be filed not later than **Friday, July 2, 2010.**  Upon the filing of these motions, the Court will order an appropriate briefing schedule.

Dated: June 30, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge